## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| WENDELL E. HALL, SR. | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civ. No. 11-1278-LPS |
| | : | |
| E.I. DU PONT DE NEMOURS AND | : | |
| COMPANY, | : | |
| | : | |
| Defendant. | : | |

Wendell E. Hall, Pro Se, New Castle, Delaware.

      Plaintiff.

Kathleen Furey McDonough and Michael Brendan Rush, Esquires, Potter Anderson & Corroon, LLP, Wilmington, Delaware.

      Attorneys for Defendant.

## MEMORANDUM OPINION

September 17, 2013
Wilmington, Delaware

**STARK, U.S. District Judge:**

## I.     INTRODUCTION

Plaintiff Wendell E. Hall, Sr. ("Plaintiff") filed this action against Defendant E.I. du Pont

de Nemours and Company ("Defendant") alleging employment discrimination pursuant to Title

VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.* (D.I. 2)  The Court

has jurisdiction pursuant to 28 U.S.C. § 1331.  Presently before the Court is Defendant's motion

for summary judgment (D.I. 28), opposed by Plaintiff.  For the reasons that follow, the Court will

grant Defendant's motion.

## II.     PROCEDURAL BACKGROUND

Plaintiff's charges of discrimination, dated October 8, 2010 and April 14, 2011, assert

discrimination by reason of race when Defendant failed to promote Plaintiff and/or pay him as a

supervisor and when Defendant denied Plaintiff's request to retire under the CTP (i.e., Career

Transition Plan).  (D.I. 2 Exs.)

The Complaint alleges discrimination by reason of race when Plaintiff "was leading a

group of 8-11 persons in a small lot production group and was being paid not at supervisory level

as a peer was being paid that was also supervising."  (D.I. 2 at ¶ 10)  It further alleges, "CTP

offered to other whites when their group was being sold and the CTP was not offered to me when

my group was being sold."  (*Id.*)

## III.     FACTUAL BACKGROUND

Plaintiff, a former employee of Defendant, was hired as a lab operator in 1977 and retired

as a full-service employee under a voluntary retirement program in August 2009.  (D.I. 32 at

A37, A74)  Between 2006 and 2007, Plaintiff worked in the fuel cells group, which was

comprised of two subgroups. (D.I. 31 at ¶ 5) Plaintiff worked in the direct methanol fuel cell ("DMFC") group, the smaller of the two subgroups in the fuel cells business, as measured by the number of employees and contractors within the subgroup and in the amount of production for which the group was responsible. (*Id.* at A79) The other group was the hydrogen group. (D.I. 31 at ¶ 7-10) Because of the differences between the subgroups, the hydrogen group staffed a first line supervisor, but the DMFC group did not. (*Id.* at ¶ 9) Dave Douglas was a first line supervisor in the hydrogen group between 2006 and 2007 and had held the position since 2003. (D.I. 31 at ¶ 6)

Plaintiff testified that in 2007 and 2008, he supervised two DuPont employees and approximately eight contractors who worked in the DMFC group, but he did not receive supervisor's pay. (D.I. 32 at A75, A80) According to Plaintiff, he was involved in the contractor hiring process and had the authority to discipline the contractors. (*Id.* at A82-83) Plaintiff testified that, by the end of 2008, he no longer supervised the contractors because the DMFC group no longer used contractors. (*Id.* at A75). According to Dr. Mookkan Periyasamy ("Dr. Periyasamy"), who was Plaintiff's supervisor during the relevant time-period, Plaintiff was not a first line supervisor, did not perform the duties of that position, and did not have the authority to hire, fire, or otherwise discipline any contractors or DuPont employees working in the DMFC group. (D.I. 31 at ¶¶ 12-14) According to Dr. Periyasamy, Plaintiff was instructed to respond to questions that contractors working in the DMFC group might have about their duties, especially those concerning safety issues. (*Id.*) Dr. Periyasamy rated Plaintiff as the top lab technician in the fuel cell's business, and Plaintiff's interactions with contractors were reflected in his compensation. (*Id.* at ¶ 17)

2

Dr. Periyasamy testified that in 2006, Nicholas Jeannette ("Jeannette"), a Caucasian male, held the same position before Plaintiff assumed the position in 2007. (*Id.* at ¶ 15) Jeannette was not classified as a first line supervisor and was not paid at a supervisor's rate of pay. (*Id.*) No one was promoted to a first line supervisor in the DMFC group during the 2007-2008 time frame. (D.I. 30 at ¶ 20; D.I. 31 at ¶ 11)

According to Plaintiff, Defendant failed to treat him as a supervisor due to his race. (D.I. 32 at A76) During his deposition, Plaintiff testified that he did not have any written or verbal evidence of race discrimination. (*Id.* at 32 at A83)

Plaintiff decided to retire in the Spring of 2009. (D.I. 32 at A81) At the time, he was performing repetitive, nonchallenging tasks. (*Id.* at A81) Plaintiff wrote to management and asked then to consider "A. offering [him] a CTP as [his] job ha[d] vanished," and "B. offering a promotion prior to CTP to make up for the promotion that [he] deserved that [he] might retire at level 3." (D.I. 38 at DWH58-60; *see also* D.I. 32 at A84)

The CTP program is a benefits program designed to assist full service employees who lose their jobs due to permanent reductions in the workforce. (D.I. 30 at ¶ 8; D.I. 32 at A27) The CTP program is only available when employees are terminated for "lack of work" and their positions are eliminated. (D.I. 30 at ¶ 8; D.I. 32 at A27) The CTP program is not a voluntary program and is not a retirement plan.[1] (D.I. 30 at ¶ 8; D.I. 32 at A27) When a DuPont business unit receives approval to implement a reduction in force, the unit determines how many future positions are needed and how many positions will be reduced. (D.I. 30 at ¶ 10) A qualification

---

[1]Benefits under the CTP program include one month's salary for every two years of service (up to one year's salary), continuation of medical and dental coverage and life insurance for one year, and tuition reimbursement up to $5,000. (D.I. 30 at ¶ 9)

based selection process is used to determine which employees will remain and those employees with the lowest score are selected for elimination. (*Id.*) The eliminated employees are given an opportunity to find another position with Defendant within sixty days but, if they do not find a position or choose not to seek continued employment, they are terminated and receive CTP benefits. (*Id.*)

Defendant was not implementing a permanent reduction in force in the fuel cell group in May 2009. (D.I. 30 at ¶ 11) As a result, the qualification based selection process was not used and CTP benefits were not available to lab technicians, like Plaintiff, who were terminated. (*Id.*) However, in May 2009, the fuel cells business announced plans to initiate a retirement transition program ("RTP"). (*Id.*)

The RTP program is a voluntary retirement program used by Defendant's business units that are dealing with temporary declines in customer demands. (D.I. 32 at A1-A2) When a business unit uses this program, eligible employees are notified of their right to volunteer for the program. (*Id.* at A11) The program is typically used by employees who seek to transition to an alternative work schedule in advance of their retirement. (*Id.* at A10) Employees are not entitled to benefits under this program as a matter of right, absent the implementation of the program. (D.I. 30 at ¶ 6) Employees who enter the program volunteer to retire or separate and then return as a limited service employee ("LSE"). (D.I. 32 at A10) Employees who volunteer to retire under the RTP program receive a $5,000 sign-on bonus. (*Id.* at A1) The employee returns to work as an LSE for up to an additional 999 hours at the employee's former pay rate in the twelve months following separation. (*Id.* at A10) Once an employee works 999 hours as an LSE, the employee "goes off roll" permanently. (D.I. 30 at ¶ 7) Plaintiff believed that the RTP program

4

replaced the CTP program. (D.I. 32 at A84)

Nine employees, including Plaintiff, volunteered to participate in the RTP program. (*Id.* at ¶ 12) Plaintiff volunteered for the RTP program because Defendant was downsizing and he was worried his position would be eliminated. (D.I. 32 at A85) Plaintiff submitted his RTP volunteer form on June 26, 2009, officially retired at the end of August 2009, returned as an LSE on September 15, 2009, and worked for 999 additional hours. (*Id.* at A37-39, A74) The LSE assignment ended on April 28, 2010. (*Id.* at A45-46, A74).

In October 2009, Defendant changed its fluoroproducts and chemical solutions businesses. (D.I. 30 ¶ 13; D.I. 32 at A42) The fluoroproducts included the fuel cells business where Plaintiff worked. (D.I. 32 at A42) At the same time, the business model for the fuel cells business changed, and Defendant made a strategic decision to discontinue production of membranes and to continue to sell materials into the membrane and dispersion fuel cells market. (*Id.*) The merger and change in the business model led to a decision in December 2009 to eliminate twenty-three positions, including those of twelve lab technicians. (*Id.* at A42-A44; D.I. 30 at ¶ 14) A qualification based selection process was used to eliminate the positions; selected employees who were not able to find other positions within DuPont received CTP benefits. (D.I. 30 at ¶ 14) LSE employees were not eligible to receive CTP benefits. (D.I. 32 at A85) Because Plaintiff had already retired and was not a full service employee at the time the CTP was implemented, he was not included in the selection process used to determine which employees would remain with Defendant. (D.I. 30 at ¶ 15; D.I. 32 at A85) None of the other eight employees who volunteered to retire under the RTP program in June 2009, and who were then employed as an LSE, were included in the CTP process. (D.I. 30 at ¶ 15; D.I. 32 at A47-A48)

5

When the CTP process was utilized in October 2009, Barry Connolly ("Connolly") was employed in the fuel cells business. (D.I. 30 at ¶ 16) In October 2009, Connolly had announced his intention to retire effective March 2, 2010. (*Id.*) Connolly began using his accumulated vacation time on November 23, 2009 and, while he was vacation, Defendant made the decision to use the CTP process with the fuel cells group. (*Id.* at ¶ 17) Connolly was included in the qualification based selection process because his official retirement was not until March 2010, and he could have changed his mind at any time to not retire. (*Id.*) Connolly's position was eliminated through the selection process and he received CTP benefits. (*Id.* at ¶ 18)

On February 10, 2010, Plaintiff wrote to Defendant's human resources personnel and inquired as to why CTP was now being offered and not the RTP that he had received. (D.I. 38 at CWH68) The letter states, "I personally made my decision to retire in July based off wrong information which needless to say does not seem fair." (*Id.*) Human resources responded that, at the time Plaintiff sought to retire, RTP was the only program underway. (*Id.* at DWH69)

Plaintiff filed his first charge of discrimination with the EEOC on October 8, 2010, asserting that he was not promoted on the basis of race. (D.I. 32 at A49, A77) On January 26, 2011, the EEOC issued its notice of right to sue along with its determination that the first charge of discrimination was time-barred. (*Id.* at A50) Plaintiff received the notice around the time that it was mailed. (*Id.* at A78)

On April 14, 2011, Plaintiff filed a second charge of discrimination with regard to his retirement claim. (*Id.* at A51) The EEOC determined that the second charge was time-barred, but reopened it on June 7, 2011 after it concluded that Plaintiff first met with the EEOC in May 2010 and that it was not until October 2009 when Plaintiff learned of the alleged April 2009

6

discriminatory acts of which he complains. (*Id.* at A52-53) The EEOC dismissed the second

charge on September 29, 2011, when it concluded there was no evidence of discrimination. (*Id.*

at A54) Plaintiff filed his complaint on December 22, 2011.

## IV.  LEGAL STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine

issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574,

586 n.10 (1986). An assertion that a fact cannot be – or, alternatively, is – genuinely disputed

must be supported either by citing to "particular parts of materials in the record, including

depositions, documents, electronically stored information, affidavits or declarations, stipulations

(including those made for the purposes of the motion only), admissions, interrogatory answers, or

other materials," or by "showing that the materials cited do not establish the absence or presence

of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the

fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the

nonmovant must then "come forward with specific facts showing that there is a genuine issue for

trial." *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted). The Court will "draw all

reasonable inferences in favor of the nonmoving party, and it may not make credibility

determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S.

133, 150 (2000).

To defeat a motion for summary judgment, the non-moving party must "do more than

simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475

7

U.S. at 586; *see also Podohnik v. United States Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005)

(stating party opposing summary judgment "must present more than just bare assertions,

conclusory allegations or suspicions to show the existence of a genuine issue") (internal

quotation marks omitted). However, the "mere existence of some alleged factual dispute

between the parties will not defeat an otherwise properly supported motion for summary

judgment;" and a factual dispute is genuine only where "the evidence is such that a reasonable

jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 247-48 (1986). "If the evidence is merely colorable, or is not significantly probative,

summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex

Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated

"against a party who fails to make a showing sufficient to establish the existence of an element

essential to that party's case, and on which that party will bear the burden of proof at trial").

Thus, the "mere existence of a scintilla of evidence" in support of the non-moving party's

position is insufficient to defeat a motion for summary judgment; there must be "evidence on

which the jury could reasonably find" for the non-moving party. *Anderson*, 477 U.S. at 252.

With respect to summary judgment in a discrimination case, the Court's role is "to determine

whether, upon reviewing all the facts and inferences to be drawn therefrom in the light most

favorable to the plaintiff, there exists sufficient evidence to create a genuine issue of material fact

as to whether the employer intentionally discriminated against the plaintiff." *Hankins v. Temple

Univ.*, 829 F.2d 437, 440 (3d Cir. 1987).

8

## V.   **DISCUSSION**

Defendant moves for summary judgment on the grounds that: (1) Plaintiff's claims are barred by the applicable statute of limitations; (2) Plaintiff cannot demonstrate any material issues of fact, and it is entitled to judgment as a matter of law; and (3) Plaintiff cannot show discrimination on the basis of race.

### A.   **Statute of Limitations**

As a threshold matter, Defendant contends that Plaintiff's claims are time-barred. The record reflects that Plaintiff filed two charges of discrimination with the EEOC. While Plaintiff states that the two charges were, in fact, one case, the record does not reflect that the EEOC treated the two charges as a single charge. Each charge received its own case number, a separate notice of right to sue was issued for each case, and those notices were issued on separate dates. Plaintiff argues that the doctrines of equitable tolling and equitable estoppel extend the limitations period for the claims and, therefore, his claims were timely filed.

A plaintiff bringing an employment discrimination claim under Title VII must exhaust administrative remedies by complying with the procedural requirements in 42 U.S.C. § 2000e-5. In a "deferral state," such as Delaware, "the ordinary time for filing a charge of employment discrimination with the EEOC is 300 days after the alleged discrimination when the charge is filed first . . . with the appropriate state agency." *Rush v. Scott Specialty Gases, Inc.*, 113 F.3d 476, 480 (3d Cir. 1997) (citing 42 U.S.C. § 2000e-5(e)(1)); *see also Riley v. Delaware River and Bay Auth.*, 457 F. Supp. 2d 505, 510 (D. Del. 2006) ("A claimant bringing a charge of discrimination under Title VII in Delaware has 300 days from the time of the alleged discriminatory act to file a complaint with the EEOC"). The 300-day requirement is subject to

9

waiver, estoppel, and equitable tolling. *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982).

After a plaintiff files a charge against an employer with the EEOC and subsequently receives a right-to-sue letter, the plaintiff's "ensuing suit [in district court] is limited to claims that are within the scope of the initial administrative charge." *Barzanty v. Verizon Pa., Inc.*, 361 F. App'x 411, 414 (3d Cir. Jan. 20, 2010) (citing *Antol v. Perry*, 82 F.3d 1291, 1296 (3d Cir. 1996)). Under Title VII, a plaintiff wishing to file a complaint must do so in federal court within ninety days of receipt of the EEOC's notice of right to sue. *See* 42 U.S.C. § 2000e-5(f)(1); *see also Burgh v. Borough Council of Borough of Montrose*, 251 F.3d 465, 470 (3d Cir. 2001).

A plaintiff seeking equitable relief from a statute of limitations must establish that: (1) the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) the plaintiff has timely asserted his or her rights mistakenly in the wrong forum. *See Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1387 (3d Cir. 1994). A plaintiff seeking to invoke equitable tolling on the grounds that he or she was actively misled by the defendant must show "that he or she could not, by the exercise of reasonable diligence, have discovered essential information bearing on his or her claim." *Ruehl v. Viacom, Inc.*, 500 F.3d 375, 384 (3d Cir. 2007) (citation omitted); *see also Hart v. J.T. Baker Chem. Co.*, 598 F.2d 829, 834 (3d Cir. 1979) (denying equitable tolling although employee was given four reasons for her discharge, none related to her gender, "her suspicions [of gender discrimination] were sufficient to lead a reasonable person to inquire further into the reasons for her discharge"). Plaintiff has the burden

of proof to establish that the equitable tolling doctrine applies. *See Courtney v. LaSalle Univ.*,
124 F.3d 499, 505 (3d Cir. 1997).

### 1.    First Charge of Discrimination: Failure to Promote

In the first charge of discrimination, Plaintiff alleges that he was denied promotions on
the basis of race up to, and including, April 2009. The first charge of discrimination was filed on
October 8, 2010, more than 300 days from the alleged last day of discrimination. Plaintiff argues
that equitable tolling applies because there was no reason to expect or suspect discrimination
with regard to "supervision." (D.I. 37 at 8)

The record does not support an inference that any of the equitable tolling theories apply
to the first charge of discrimination. The second and third theories are plainly inapplicable
because Plaintiff was not prevented from asserting his rights and he did not did not timely assert
his rights in the wrong forum. Plaintiff's theory of equitable tolling appears to be that Defendant
actively misled him respecting his cause of action. However, Plaintiff has failed to show that he
could not have, by the exercise of reasonable diligence, discovered essential information bearing
on his claim. Indeed, the charge of discrimination states that Plaintiff was aware of the facts
surrounding his claim by at least May 20, 2009, when he submitted his letter of resignation/
retirement after "[a] non-Black peer" was elevated and Plaintiff was not. (*See* D.I. 32 at A49)
There are no circumstances that justify the application of the doctrine of equitable tolling as to
the first charge of discrimination. Therefore, the Court finds that equitable tolling does not save
Plaintiff's failure to promote claim, as he failed to file his charge of discrimination within the
300-day limitation period.

11

Further, Plaintiff received a notice of right to sue for the failure to promote claim on or about January 26, 2011. Under Title VII, Plaintiff had ninety days from receipt of the right to sue notice to file his complaint in federal court. Plaintiff, however, did not file the instant complaint until December 22, 2011, well past the ninety-day time period. Therefore, it is time-barred.

Because Plaintiff filed his EEOC charge on the failure to promote claim outside the 300-day time period and then failed to file his lawsuit within ninety days from receipt of his right to sue notice, the Court finds it appropriate to grant Defendant's motion for summary judgment as to the failure to promote claim.

## 2.      Second Charge of Discrimination: Retirement and Denial of CTP

Plaintiff filed his second charge of discrimination on April 14, 2011. In the charge, Plaintiff states that he sought CTP but it was not offered to him, which resulted in his retirement under RTP, effective August 31, 2009.[2]  Plaintiff's claim of discrimination rests upon the fact that white employees were offered CTP, but he was not. However, two white employees retired after him, one in September or October 2009 and the other in November 2009, and CTP was offered to them both, one of whom was allowed to have his retirement date altered to fit the November CTP.

The EEOC initially found that the charge was not timely filed. However, it reopened the case, finding that because Plaintiff's "initial contact with [the EEOC] was May 10, 2010 and he indicated that he learned of the discrimination in October 2009, when he learned that Mr. Connolly was allowed to retire under the CTP which [Plaintiff] alleges he was told was no longer available, his charge was timely filed." (D.I. 32 at A53)  Plaintiff once again contends that

---

[2]Plaintiff last worked in May 2010 as an LSE.

equitable tolling applies because there was no reason to expect or suspect discrimination for CTP. (*See* D.I. 37 at 8)

The record does not support an inference that any of the equitable tolling theories apply to the second charge of discrimination. The second and third theories are plainly inapplicable because Plaintiff was not prevented from asserting his rights and he did not did not timely assert his rights in the wrong forum. Plaintiff's theory of equitable tolling is again that Defendant actively misled him with respect to this cause of action. However, Plaintiff has failed to show that he could not have, by the exercise of reasonable diligence, discovered essential information bearing on his claim.

The record reflects that: (1) Plaintiff was aware by August 31, 2009 that he was not offered CTP; (2) Plaintiff learned in October or November 2009 that white employees were offered CTP; (3) Plaintiff confirmed with other employees in April 2010 that white employees received CTP; (4) Plaintiff's initial contact with the EEOC occurred on May 10, 2010 and at that time he told them he had learned of the discrimination in October 2009; and (5) Plaintiff filed his charge of discrimination on April 14, 2011. Even if Defendant misled Plaintiff, Plaintiff was aware of the discrimination by – at the latest – when he met with the EEOC on May 10, 2010. No matter which dates are used, and despite the EEOC's determination to reopen the case, Plaintiff did not timely file his second charge of discrimination within the 300-day time frame.[3] The Court finds that equitable tolling does not save Plaintiff's retirement claim as he failed to file his second charge of discrimination within Title VII's 300-day limitation period.

---

[3]Using the May 10, 2010 date, Plaintiff's April 14, 2011 filing came 339 days later.

Accordingly, the Court finds it appropriate to grant Defendant's motion for summary judgment as to the retirement claim.

### 3. Equitable Estoppel, Equal Pay Act, Lilly Ledbetter Fair Pay Act

With regard to the statute of limitations, Plaintiff also opposes the motion for summary judgment on the grounds of equitable estoppel, the Equal Pay Act, and the Lilly Ledbetter Fair Pay Act. None of these theories saves Plaintiff's claims.

Equitable estoppel arises when the defendant has attempted to mislead the plaintiff and prevent the plaintiff from suing on time. *See Oshiver*, 38 F.3d at 1390. Equitable estoppel requires a showing of inequitable conduct on the part of the defendant. *See id.* The record does not support a finding that Plaintiff's failure to timely file was attributable to any inequitable conduct on the part of Defendant.

In addition, the Equal Pay Act, which prohibits employers from discriminating based on sex "by paying wages to employees . . . at a rate less than the rate at which he pays wages to employees of the opposite sex . . . for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions," 29 U.S.C. § 206(d)(1), is inapplicable, given that Plaintiff's claims rest upon race discrimination.

Finally, Plaintiff references the Lilly Ledbetter Fair Pay Act's retroactive effective date of May 28, 2007.[4] The Fair Pay Act, codified at 42 U.S.C. § 2000e-5(e)(3)(A), was signed into law on January 29, 2009, made retroactive to May 28, 2007, and provides that an unlawful

---

[4]The Act does not apply to failure to promote claims. *See Noel v. The Boeing Co.*, 622 F.3d 266, 273 (3d Cir. 2010).

14

employment practice with respect to discrimination occurs each time wages, benefits, or other compensation is paid. *See Noel*, 622 F.3d at 270 n.5. Hence, each discriminatory paycheck is a separate discriminatory act that could give rise to a Title VII claim.

Plaintiff's pay claims began to run on either: (1) December 31, 2008, the last day Plaintiff alleges that he performed supervisory work but received unequal pay; or (2) May 20, 2009, the day he sought a promotion and/or CTP. The Lilly Ledbetter Fair Pay Act does not save Plaintiff's claims. Plaintiff failed to timely file a charge of discrimination with regard to either claim.

## B.    Discrimination

Assuming arguendo that Plaintiff's discrimination claims are not time-barred, the record reflects that no reasonable jury could find in favor of Plaintiff.

During his deposition, Plaintiff indicated that he did not have direct evidence of discrimination. In the absence of direct evidence of discrimination, Plaintiff may prove his claim according to the *McDonnell Douglas* burden-shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under *McDonnell Douglas*, Plaintiff bears the initial burden of establishing a prima facie case of unlawful discrimination. *Id.* at 802. If Plaintiff succeeds, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its decision. *Id.* Once the employer meets its "relatively light burden," the burden of production returns to Plaintiff, who must show by a preponderance of the evidence that the employer's proffered reason is pretextual. *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994). Once an employer has proffered a legitimate, nondiscriminatory reason, the plaintiff "generally must submit evidence which: (1) casts sufficient doubt upon each of the

15

legitimate reasons proffered by the defendant so that a factfinder could reasonably conclude that each reason was a fabrication; or (2) allows the factfinder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." *Id.* at 762. The ultimate issue is whether "discriminatory animus" motivated the employer, and it is not enough to show that the employer made a "wrong or mistaken" decision. *Id.* at 765 (citations omitted). In this regard, Plaintiff must uncover "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the employer's explanation that would allow a reasonable factfinder to believe that the employer did not truly act for the asserted reason. *Id.*

In order for Plaintiff to maintain a prima facie case of racial discrimination, he must show that: (1) he is African American; (2) he was qualified for the position; (3) he experienced an adverse employment action; and (4) similarly situated persons who are not African American were treated more favorably. *See Jones v. School Dist. of Phila.*, 198 F.3d 403, 410-11 (3d Cir. 1999).

## 1.     Failure to Promote/Unequal Pay

Plaintiff has not demonstrated a prima facie case of discrimination, as he has failed to show that similarly situated persons, not in his protected class, were treated more favorably. Evidence of disparate treatment must show that a comparator was similarly situated to the plaintiff "in 'all relevant respects.'" *Keystone Redevelopment Partners LLC v. Decker*, 631 F.3d 89, 109 (3d Cir. 2011) (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992)). In order to determine who might qualify as a similarly situated employee, the Court looks to the job function, level of supervisory responsibility and salary, and other factors relevant to the particular workplace. *See Monaco v. American Gen. Assurance Co.*, 359 F.3d 296, 305 (3d Cir. 2004).

16

Plaintiff sought a position as a first line supervisor in the DMFC group because the hydrogen group staffed a first line supervisor and Plaintiff believed that he performed the same duties as the hydrogen group first line supervisor. There is a dispute regarding Plaintiff's job duties. Plaintiff describes his duties as supervisory, while Defendant contends they were not. Nonetheless, it is undisputed that the DMFC group and the hydrogen group had many differences, which resulted in different responsibilities in each distinct group. Of note is that the record reflects that the hydrogen group first line supervisor had different job responsibilities than Plaintiff.[5] Moreover, it is undisputed that Defendant did not staff a first line supervisor in the DMFC group. In addition, the person who performed the same job duties in the DMFC group prior to Plaintiff was Caucasian, and he did not hold the title of a first line supervisor, nor did he receive a supervisor's salary. Also, during the relevant time period, no one was anyone promoted to a first line supervisor in the DMFC group. *See generally O'Neal v. Brownlee*, 2004 WL 2827052, at *8 (E.D. Pa. Dec. 9, 2004) (granting summary judgment where plaintiff failed to show that a similarly situated person from non-protected class was promoted instead of plaintiff).

Finally, even if Plaintiff had established a prima facie case of discrimination, Defendant has articulated a legitimate, nondiscriminatory reason for not promoting him: the DMFC group did not staff a first line supervisor. Nothing before the Court contradicts Defendant's proffered reason for its failure to promote Plaintiff. Nor is Defendant's proffered reason for its action weak, incoherent, implausible, or so inconsistent that a reasonable factfinder could rationally find

---

[5]Plaintiff testified that he performed the same duties as Douglas "except" Douglas also did some building coordination in another building and Douglas was the "point man" for the company used to retain contractors. (D.I. 32 at A79, A82)

17

it unworthy of credence. *See Sarullo v. United States Postal Serv.*, 352 F.3d 789, 800 (3d Cir.
2003).

Plaintiff has failed to established a prima facie case of discrimination. Moreover, no
reasonable jury could find that Defendant failed to promote Plaintiff on the basis of race.
Therefore, the Court will grant Defendant's motion for summary judgment on the failure to
promote claim.

### 2. Retirement Claim

Similar to the failure to promote claim, Plaintiff has failed to demonstrate a prima facie
case of discrimination with regard to his retirement claim, inasmuch as he has failed to show that
similarly situated persons, not in his protected class, were treated more favorably. Plaintiff has
failed to identify a similarly situated employee from outside his protected class who requested
CTP benefits in the Spring of 2009 and who was granted that request. Nor has Plaintiff pointed
to a similarly situated employee from outside his protected class who opted to receive RTP
benefits and who was then allowed to retract the decision in order to receive CTP benefits.

Plaintiff contends that Connolly, a Caucasian, is similarly situated and was treated more
favorably. The record reflects, however, that Connolly never requested CTP benefits and did not
volunteer to retire under the RTP program but, instead, his position was eliminated through the
selection process. In addition, while Connolly had announced his retirement, he had not yet
retired, and he remained an employee, whereas Plaintiff had already retired when the CTP
program was used. The record does not support Plaintiff's contention that he and Connolly were
similarly situated. Accordingly, the Court finds that Plaintiff has failed to establish a prima facie
case of discrimination with regard to his retirement claim.

18

Finally, even if Plaintiff had established a prima facie case of discrimination, Defendant has articulated a legitimate, nondiscriminatory reason for not providing him CTP benefits. At the time Plaintiff decided to retire, Defendant was not implementing a permanent reduction in force in the fuel cell group. Hence, the qualification based selection process was not used for lab technicians who were terminated and eligible for CTP benefits. Indeed, it was not until December 2009 that the CTP process came into play. When Plaintiff decided to retire in May 2009, only the RTP program was available and Plaintiff opted to retire under that program. Nothing before the Court contradicts Defendant's proffered reason for its failure to provide Plaintiff CTP benefits. Nor is Defendant's proffered reason for its action weak, incoherent, implausible, or so inconsistent that a reasonable factfinder could rationally find it unworthy of credence. *See Sarullo*, 352 F.3d at 800

Plaintiff has failed to established a prima facie case of discrimination. Moreover, no reasonable jury could find that Defendant failed to provide Plaintiff CTP benefits on the basis of race. Therefore, the Court will grant Defendant's motion for summary judgment on the retirement claim.

## VI.   CONCLUSION

For the above reasons, the Court will grant Defendant's Motion for Summary Judgment (D.I. 28). An appropriate Order follows.